Statement of the Case.
NICHOLLS, J.
This suit is one via ordinaria for the enforcement of a mortgage given by defendant on March 23, 1903, and for judgment upon the notes which that mortgage secured. The defendant filed the following answer: After pleading the general denial it averred that on or about the 10th day of May, 1906, plaintiff wrote to its legally authorized representative and agent in the city of Lake Charles that plaintiff would extend the time for the payment of the notes sued on for one year. upon the following terms and conditions: Defendant to make an unconditional transfer to plaintiff of all the properties referred to and described in the act of mortgage annexed to plaintiff’s petition; plaintiff then to give defendant a counter letter, agreeing to reeonvey all said property to defendant at any time within 12 months upon defendant’s paying to plaintiff the amount of the debt sued on with interest and costs; plaintiff to take possession of the property and to collect the rents from the same from May 1,1906. That plaintiff’s agent immediately communicated said offer to respondent, and respondent immediately accepted the same and notified plaintiff’s agent, who is an attorney and notary public, to prepare the necessary act conveying said property over to plaintiff, and that he would execute and sign the same. That, with the consent of respondent, plaintiff took charge and possession of all said properties, and has collected the rents due on the same from May 1, 1906.
That the act transferring said property to plaintiff was not executed and signed by respondent, because plaintiff’s agent, who is an attorney and notary, as aforesaid, did not prepare the necessary act for respondent’s signature, as he was requested and notified to do. That respondent has been ready and willing to execute and sign the same, and now and here offers to do so.
In view of the premises, he prays that plaintiff’s demand be rejected, and for costs and for general relief.
The district court rendered judgment in favor of the plaintiff against defendant for the sum of $15,000, with 8 per cent, per annum interest from and after March 23, 1905, until paid, and 10 per cent, additional attorney’s fees on the said amount of principal and costs. It further decreed that the mortgage executed by the defendant in favor of the plaintiff to secure the payment of the debt due the pldintiff, principal, interest, attorney’s fees, and costs, on the property described in the mortgage, be recognized and enforced. It further adjudged and decreed that the judgment should be null and void ari*d of no force and effect if the defendant should on or before 10 days of the judgment execute and deposit with the clerk of the court of Calcasieu parish a formal act of sale transferring the property hereinabove *679 described to tbe plaintiff, tbe Interstate Bank & Trust Company, with warranty of title, clear and free of any and all incumbrances against or affecting the same of a date subsequent to April 25, 1906, and in addition thereto to deposit with the clerk of court to the order of the plaintiff Interstate Bank & Trust Company the sum of $100, pay the taxes on the property hereinabove described for 1905, and one-third of the taxes for 1906; the tax receipts for 1905 to be deposited with said clerk, and a sum equal to one-third of the taxes for the year 190G likewise deposited with said clerk.
The court further ordered, adjudged, and decreed that the deed hereinabove mentioned to be executed by the said defendant should not be filed and • recorded unless a counter letter be executed and delivered granting the defendant the right to redeem the property hereinabove described on or before 12 months after May 1, 1906, by paying the plaintiff the amount of the judgment in principal, interest, and attorney’s fees. It further ordered, adjudged, and decreed that defendant pay1 all costs of this suit.
Plaintiff filed a motion for a new trial on the following grounds:
First. The court erred in admitting the correspondence purporting to be signed by Lynn H. Dinkins without proof of the signature of said Dinkins thereto, or of his authority to bind the plaintiff herein.
Second. The court erred in failing to sustain the plaintiff’s motion to strike out the defendant’s answer as being in effect a plea of prematurity, and coming too late after default entered herein.
Third. The court erred in admitting evidence in support of the defense of prematurity as set up in defendant’s answer, o
Fourth. The court erred in permitting parol evidence to be introduced of the a lleged agreement by the defendant to sell, and by the plaintiff to buy, the mortgaged property on the terms set forth in the defendant’s alleged answer.
Fifth. The court erred in holding that any legal or enforceable agreement between the parties was proved.
Sixth. The court erred in not holding that the parties contemplated a formal written agreement, and that either party was at liberty to recede therefrom at any time prior to the signature thereof.
Seventh. The court erred in not holding that the failure of the defendant to pay the $100 mentioned in correspondence between him and the bank, and in not tendering the $100, disentitled him to claim any benefit from the alleged extension of time.
Eighth. The court erred in granting relief beyond the pleadings, and not specifically prayed for in defendant’s answer.
Ninth. And, without admitting that there was any valid or completed agreement between the parties, plaintiff further and alternatively avers that the court erred, if it found that such agreement did exist, in not holding that the same was without valuable or legal consideration, thereby not enforceable in law.
In view of the premises, for the foregoing and other errors apparent in the record, plaintiff prays the court to set aside the judgment herein' rendered and grant a new trial herein.
This motion was overruled. Plaintiff has appealed.
Opinion.
The defense in this case rests upon an agreement alleged to have been made between himself and the plaintiff by which it bound itself to extend the date of the notes sued on, conditioned upon his doing certain things covered by the agreement and enumerated therein. He urged that the plaintiff, in bringing this suit, illegally ignored the agreement and violated its terms. Plaintiff maintained below that this contention was really *681 an exception of prematurity, and. that it should have been advanced as such and before default. We think the district court correctly ruled adversely to the plaintiff on that question. Plaintiff sued upon an original contract. Defendant insisted that that contract had been modified by the new agreement which he set out. Whether or not that claim was well founded was a matter in pais which had to be determined by evidence. We think that issue was properly raised as an answer. Carondelet Canal & Nav. Co. v. Parker, 29 La. Ann. 430, 29 Am. Rep. 339.
The parties on the trial entered into a wide discussion of numerous points which it is unnecessary to pass upon unless we should decide in favor of the defendant upon a question which stands at the threshold of the case, which is whether the plaintiff was shown in the evidence adduced to have been a party to the agreement alleged. Defendant introduced in evidence, in support of proof of the agreement, a number of letters written to him by Lynn H. Dinkins, signing himself “Vice President,” which letters were dated at New Orleans and written upon letter paper with the letter head “Interstate Trust & Banking Company,” and the testimony of I. D. Wall, who conducted these negotiations at Lake Charles with defendant. The trial court evidently reached the conclusion that the agreement had been established ; that it was still open for compliance by defendant with its terms, but that the letter had not as yet done so; that the plaintiff, therefore, should not have brought suit as it did without having first put defendant formally in default and given him an opportunity to comply. Under these circumstances it rendered the judgment appealed from, which plaintiff characterizes as an extraordinary one, not authorized or called for by the prayer of either plaintiff or the defendant. The theory upon which the court rendered the judgment in the terms that it did was evidently that it had the right and authority (in permitting the plaintiff to obtain relief in the case in its existing situation) to attach such conditions thereto as by it was deemed equitable and just. See Hennen’s Digest, title “Judgment,” subdivision “Conditions of Judgment,” p. 736.
The evidence adduced on the trial was not such as would commit the iffaintiff to the agreement made. There was not evidence sufficient to establish with certainty the fact that Lynn H. Dinkins was an officer of the plaintiff company or had, in reality, any connection with it, or that he had authority from it to make the alleged agreement. Defendant’s reliance as to that fact is the description of himself in the letters written by him to the defendant as “Vice President,” the letters being dated from New Orleans, on paper headed “Interstate Bank & Trust Company,” upon a subject in which no one but parties connected with that company would have an interest or even knowledge. The mere declaration by a party claiming to act for another that he occupies such relations to him or to it as would authorize him to act in the premises is no proof of that fact. Defendant attempted to prove the fact by the testimony of J. D. Wall, requiring him to produce all the letters which he had received from the plaintiff. In answer to a subpoena duces to that effect, he produced in court a number of letters similar to those which defendant himself had in his own possession accompanying the same, with sworn return in which he declared that he had no letters in his possession formally signed by the Interstate Trust & Banking Company, but he had some letters (those produced by him), which seemingly had been called for by the subpoena duces tecum, purporting to have been written by Lynn H. Dinkins.
“These are the letters. They are all the letters referring to the matter mentioned in the subpoena duces tecum.”
*683 On the trial Wall was placed upon the stand, and answered the questions propounded to him as follows :
“Q. Who is the party that signed the letters — do you know?
“A. I don’t know who signed the letters, no, sir.
“Q. What connection has the writer of these letters with the plaintiff?
“A. Well, now, I don’t know who wrote those letters.
“Q. Do you know the man whose signature appears to those letters?
“A. I know the man.
“Q. What connection has he with the plaintiff ; isn’t he vice president of the plaintiff company?
“A. Not to my knowledge; no, sir, he isn’t that I know of.
“Q. Isn’t he held out to be, don’t you understand him to be?
“A. O ! yes; I understand him to be.
“Q. Isn’t he held out as such? don’t you understand he is vice president of the plaintiff company?
“A. I understand he is vice president of the plaintiff company, but I don’t know that.”
By the Court:
“Q. Are you an employs of the company?
“A. No, sir, I am not an employs.”
By defendant’s counsel:
“Q. What connection have you had with them?
“A. With the plaintiff in this suit? I have had no connection with the Interstate Bank & Trust Company.
“Q. You have not been representing them?
“A. No, sir; I have not.
“Q. Who have you been representing
“A. Mr. Lynn H. Dinkins.
“Q. Isn’t he vice president of that company?
“A. I undei’stand that he is vice president of that company.
“Q. Wasn’t he representing himself to you as being?
“A. He never told me he was vice president. He signed his name on Interstate paper, and I have talked to Mr. Dinkins, but he has never told me he was vice president of the Interstate Bank & Trust Company.
“Q. Havn’t you been representing him as an officer of that company?
“A. I have been representing Mr. Dinkins.
“Q. Have you . been representing him in a purely private capacity or as an officer of the plaintiff company?
“A. I have been representing Mr. Dinkins in this matter as a medium of communication to communicate his intention.
“Q. Hasn’t he in his correspondence with you signed as vice president of the company?
“A. The letters are the best evidence of that.”
Being shown these letters, he was asked to examine them. He answered they were letters produced by him under the order subpoena duces tecum; that he produced them because seemingly called for by the order.
Plaintiff’s counsel objected to the introduction of the letters in evidence on the ground that they were not admissible until, first, there had been proof of the signature, and, second, proof of the authority of the officer purporting to sign it to bind the corporation by such a contract.
The court allowed the letters to be introduced, stating the objection went to the effect.
Defendant argues that Dinkins having held himself as vice president, and .as having the authority to make the agreement, the company must be held to have had knowledge of the fact and to have ratified it. There is no evidence in the record that the company had knowledge of Dinkins’ action, and therefore no evidence of ratification. It may be that Dinkins was vice president of the plaintiff company, and, if so, that he had authority to make the agreement in question, but there is no direct proof of those facts, nothing from which it could be presumed by showing that through, the usual course of business of that company such authority had been vested in him. Berlin v. Cusachs, 114 La. 747, 38 South. 539. In view of the failure by the defendant to establish with legal certainty the facts stated, it cannot be held, as matters stand, that Dinkins was in reality an officer of the plaintiff company, still less its vice president, or that he had authority to bind the company by the agreement in question. Defendant relied too much upon the presumptions which he believed would flow from the condition of things shown. In the situation in which we find the case we have no alternative but to amend the judgment appealed from, and we do hereby amend it by striking out from the *685 same everything following the words “in block fourteen (14) in said town, together with all improvements situated thereon”; said judgment, when so amended, being left an absolute judgment in favor of the plaintiff against the defendant