EMILE KAHN

 VS No. 8276

GERTH'S REALTY EXPRESS

June 5th, 1922.

EMILE KAHN

VS

GERTH'S REALTY EXPRESS

No. 8276

CHARLES F. CLAIBORNE, JUDGE.

This is a suit for a commission for the sale of property.

The defendants were engaged in the business of selling real estate. J. H.Evans was employed by them to solicit and secure auction sales contracts for them; he was to have a one-half interest in such sales as he secured and the defendants the other half.

It seems that the plaintiff was also in the real estate business. He was interested in some lots which the Lockport Realty Co. had for sale. He met Mr. Evans and offered to put the lots in the hands of the Gerth Company if some suitable arrangements could be made. Evans held himself out

"as being connected with and representing Gerth's Realty Experts".

On May 20th, 1915, he wrote to the plaintiff Kahn the following letter on one of the defendants' letter heads:

"Gerth's Realty Experts Inc.

The Greatest Land Selling Organization on Earth.

Southern Office: 302 Liverpool & London & Globe Building,

New Orleans.

30 Church Street, New York;

Stephens Girard Building, Philadelphia.

George Montgomery President;
Henry Gassie, Vive-President;
Allen R. Beary, Secty-Treas.;
Charles S. Gerth, Gen'l. Mgr.

Morgan City, La., May 20th, 1915.
Mr. Emile Kahn, Raceland, La.
Dear Sir,
What have you decided to do about the lot sale

539

at Lockport? If you are interested in having us handle this sale for you please advise us at once as we would like to make arrangements to put the sale on during the coming month.

Yours very truly,

Gerth's Realty Experts Inc.

per J. H. Evans."

The plaintiff thereupon arranged an interview with Evans when they made an agreement. This agreement was confirmed by letter addressed by Evans to Emile Kahn, upon one of the same letterheads of the defendants company reproduced above. The letter is as follows:

Morgan City, La.,May 27th, 1915.

Mr. Emile Kahn,

 Raceland, La.

Dear Sir:

 We beg to confirm the offer made you by our Mr. J. H. Evans, Viz: that, for the services you are to render us in obtaining a certain contract for the sale at auction of a tract of land in the town of Lockport, La., we are to divide equally with you any net profit that we are able to make out of the deal.

Yours very truly,

Gerth's Realty Experts, Inc.

Per J. H. Evans,
Rep.

Mr. Kahn then brought Mr. Evans and the Lockport Company together at Raceland, where a contract was drawn up on June 8th, 1915, between the Lockport Realty Co., represented by Frank L. Barker, and the Gerth's Realty Experts, Inc. represented by J. H. Evans, by which the Lockport Realty Co. gave to the Gerth's Realty Experts certain lots in Lockport for sale at auction on terms and conditions specified in said contract. By this contract the Lockport people agreed to pay the Gerth's Realty Experts certain commissions and

540

certain expenses of sale, therein stated. No mention is made of the plaintiff.

In pursuance of said contract the Gerth's Realty Experts, sold certain lots to the amount of $3076.69, and received payment for the same. After deducting expenses of sale $ 217.11
and their commission <u>498.34</u>
Making a total of $ 715.45

the defendants turned over the balance to the Lockport people. On the day of the sale there was nothing said about plaintiff's commission.

In July 1916 the plaintiff sued the defendants for one-half of their commission, $498.34, basing their claim mainly upon the letter of Evans to him dated May 27th, 1915, copied above, and upon the other features of the deal narrated above.

The defendants denied any indebtedness to plaintiff. They specially averred

"that J. H. Evans is not, and was not its representative at any time, and has never been authorized by petitioner (respondent) to negotiate with plaintiff to handle any sales, or to divide equally or otherwise with plaintiff the net profits of any sales at all, and particularly the sale mentioned in this paragraph x x further answering this paragraph respondent denies that J. H. Evans has ever had any authority from respondent to sign the letter mentioned in this paragraph (May 27th, 1915) or any other letter in behalf of respondent; respondent admits the contract agreed on in paragraph V of plaintiff's petition (dated June 8th, 1915) - and is willing to be bound by that contract, but denies specifically that J.H. Evans had any power or authority from respondent to enter into any other contract; the power and authority of Evans to act for respondent being limited to obtaining the con-

tract from the Lockport Realty Company".

There was judgment for the plaintiff for the amount claimed ($249.17) and the defendants have appealed.

The plaintiff has not attempted to prove his case by any documentary evidence other than the two letters and the contract above referred to. As a general proposition, a corporation, such as the defendant can contract only through a resolution of the Board of Directors. In the case of Bright vs Metairie Cemetery Association 33 A. 58, the Court said:

> "A corporation which by its charter can only act through its board of Directors, cannot be bound to contracts by its President, without the authorization of the Board, unless it is in acts of simple administration which of necessity should be done without that authorization".
> See also 148 La. 455.

Corporations have sometimes been held liable by contracts, not of mere administration, made by officers of the corporation or managers, in the course of their functions or by authority impliedly delegated to them. But Evans was not an officer nor a manager of the defendant corporation; he was not even an employee: he was employed as agent, solely to secure sales for the defendants and for no other purpose. In the two letters addressed by Evans to the plaintiff, the letter-heads contained the list of all the officers, and the name of Evans does not appear as one of them. The plaintiff in his testimony admits that he

> "never had any conversation with Mr. Gerth or any other
> officer of the Company or its Board of Directors",

and that he

> "never met Mr. Gerth until the day of the sale"

and that there was nothing said about his commission on the day of the sale.

It was incumbent upon the plaintiff to show that Evans was

an agent of the defendant corporation authorized to make a contract similar to the one sued on. 6 A. 524; 21 A. 592; 23 A. 274; 34 A. 982; 2 Greenl. § 158, 161.

The plaintiff does not claim, as we have said, to have relied upon any action of the Board of Directors or of any officer of the corporation. Therefore his only hope is to show that the defendants held out Evans as their agent, or that, by virtue of his employment he was impliedly clothed with authority to bind the corporation in such a contract. Plaintiff testifies that Evans held himself out as representing the defendants. If the plaintiff allowed himself to be deceived by what Evans said or did, he has only himself to blame. He does not testify, nor prove, that defendants ever held out Evans as representing them otherwise than as solicitor of business. It is out of defendants' words or actions only that they can be affected. It is not shown that Evans had ever made a contract. of any kind for the corporation. By procuring this sale from the plaintiff and the Lockport Company, Evans had secured for himself one-half of the commission the defendants were to earn. But nothing shows that he had the authority to bargain away the other half of the commission belonging to the defendants, thus leaving them without any compensation whatever. Mr. Gerth, the General Manager, and Mr. Montgomery, the President, of the defendant corporation, both swear that he had no such authority - and it is easy to believe them.

Evans was never examined as a witness.

The argument that the contract of June 8th, 1915 made by Evans cannot be divided, that it must be the whole or none, - is specious in the extreme. There is no attempt by defendants to divide the contract, to accept a part and to repudiate the other - for the simple reason that the written contract of June 8th makes no mention of any commission to be paid to the plaintiff. If it had made such mention, the position assumed by the plaintiff might have had weight. Nor is there any evidence that the defendants had know-

*prior to this said sale*

ledge of any one of the two letters of May 20 and of May 27 written by Evans, pretending to act for the defendants, nor of their contents, nor of any other contract, verbal or *otherwise* ~~itemized~~, made by Evans with plaintiff, nor that Evans, acting for the company, had promised to plaintiff to divide with him any part of the commission which the defendants were to earn.

We conclude with this axiom: that an agent employed on commission, by one in the real estate business, to solicit and procure for him sales of property, is not authorized thereby to bind his principal to pay another commission to a third person who may assist the agent in securing a sale.

It is therefore ordered that the judgment herein be reversed and annulled and that there now be judgment in favor of the defendants rejecting plaintiff's demand at his cost in both Courts.

Judgment reversed.
June 5th, 1922.